## FAIRCHILD v. DAVIS, Federal Agent, et al. (No. 3388.)

Court of Civil Appeals of Texas. Texarkana. May 9, 1927.

Rehearing Denied May 19, 1927.

1. **Fraudulent conveyances** ⊕⊃95(1), 159(1)—Insolvent husband's assignment to wife is fraudulent if made without consideration or with intent known to wife to hinder creditors (Vernon's Sayles' Ann. Civ. St. 1914, arts. 3966, 3967).

Assignment by insolvent debtor to wife is void as against creditors if transfer is without consideration or if made with intent to delay, hinder, or defraud creditors of which wife has notice under Vernon's Sayles' Ann. Civ. St. 1914, arts. 3966, 3967.

2. **Fraudulent conveyances** ⊕⊃95(2)—Vendor's lien note assigned to insolvent husband did not constitute consideration for assignment of judgment to wife, where note was given for purchase of property for wife's separate estate.

Vendor's lien note assigned by wife to insolvent husband held not good consideration for husband's transfer to her of his interest in judgment, where note was used for buying property title to which was taken in wife's name becoming part of her separate estate.

3. **Husband and wife** ⊕⊃247—Statute making money received for wife's personal injuries her separate property held unconstitutional (Vernon's Ann. Civ. St. Supp. 1918, art. 4621a; Const. art. 16, § 15).

Vernon's Ann. Civ. St. Supp. 1918, art. 4621a, providing property or money received by wife as compensation for injuries sustained by her is her separate property except part necessary to pay expenses incurred held in violation of Const. art. 16, § 15, defining wife's separate property as that owned or claimed by her before marriage and acquired afterward by gift, devise, or descent.

---

⊕⊃For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**4. Husband and wife ⬥═260—Proceeds of wife's judgment for personal injuries held community property though husband, who was insolvent, had permitted wife to sue.**

Proceeds of judgment in favor of wife *held* part of community estate between husband and wife, where husband was insolvent, though suit for damages was, with husband's consent, brought in wife's name alone.

**5. Fraudulent conveyances ⬥═95(2)—Wife's assignment to insolvent husband of proceeds of judgment for injuries held not sufficient consideration as against creditors for husband's assignment of his judgment to her (Vernon's Sayles' Ann. Civ. St. 1914, art. 3967).**

Assignment to husband of proceeds of judgment in wife's favor against railroad company for injuries *held* not sufficient consideration as against creditors for husband's assignment to wife of judgment in his favor, under Vernon's Sayles' Ann. Civ. St. 1914, art. 3967, where husband was insolvent, as wife's judgment was community property.

**6. Exemptions ⬥═58—Judgment which insolvent husband assigned to wife was not exempt from his creditors' claims by fact that judgment for injuries which wife assigned husband in return may have been exempt (Vernon's Sayles' Ann. Civ. St. 1914, art. 4622; Vernon's Ann. Civ. St. Supp. 1918, art. 4621).**

Fact that proceeds of wife's judgment for personal injuries may have been exempt under Vernon's Sayles' Ann. Civ. St. 1914, art. 4622, and Vernon's Ann. Civ. St. Supp. 1918, art. 4621, because compensating her for loss of capacity to earn money, did not exempt from creditors' claims judgment in favor of insolvent husband which he assigned wife in return.

**7. Fraudulent conveyances ⬥═301(4)—Evidence held to show assignment by insolvent husband to wife of interest in judgment was made to defraud creditors to her knowledge (Vernon's Sayles' Ann. Civ. St. 1914, arts. 3966, 3967).**

In action by creditor to subject judgment in favor of insolvent debtor to payment of his claim, evidence *held* to show assignment of debtor's interest in judgment to wife, even if made for good consideration, under Vernon's Sayles' Ann. Civ. St. 1914, art. 3967, was made with intent to delay, hinder, and defraud creditors of which wife had notice, rendering assignment void under article 3966.

**8. Garnishment ⬥═114—Judgment against garnishee held proper, where unliquidated cause of action garnished was reduced to judgment before garnishee's answer, though after return day (Vernon's Sayles' Ann. Civ. St. 1914, art. 276; Vernon's Ann. Civ. St. Supp. 1922, art. 282).**

Fact that cause of action garnished was for unliquidated and uncertain damages and did not become final judgment till many months after time within which garnishee was required to answer by garnishment writ did not prevent garnishment's attaching to proceeds of judgment, where garnishee's answer was not in fact filed till after judgment's entry, under

Vernon's Sayles' Ann. Civ. St. 1914, art. 276, and Vernon's Ann. Civ. St. Supp. 1922, art. 282.

**9. Garnishment ⬥═241—Where replevy bond is executed for property garnished, judgment should be rendered only against defendant and surety on bond.**

Where replevy bond for garnished property is executed in plaintiff's favor, recovery should be allowed only as against defendant and surety on replevy bond.

Appeal from District Court, Harris County; Ewing Boyd, Judge.

Action by C. M. Fairchild against Henry Teague and wife, defendants, and James C. Davis, federal agent appointed under Act Cong. Feb. 28, 1920, § 206, and others, garnishees, in which Elsie M. Teague and others intervened in the garnishment suit. From a judgment denying plaintiff recovery and releasing the fund sought to be impounded, he appeals. Reformed and rendered.

Appellant, C. M. Fairchild, plaintiff in a suit against Henry Teague on two promissory notes for $500 each, dated July 1, 1919, and against said Teague and his wife, Elsie M. Teague, to foreclose a lien on real estate given, it was alleged, to secure the notes, on February 20, 1923, had a writ of garnishment he had sued out against them served on the Texas & New Orleans Railroad Company, the Houston & Texas Central Railroad Company, and appellee James C. Davis, federal agent appointed by the President under the Act of Congress of February 28, 1920, § 206 (section 10071¼cc, U. S. Comp. Stats. 1923 Supp.). April 17, 1924, appellee Davis as such agent answered for said railroad companies that said Henry Teague on January 21, 1922, recovered judgment against them for the sum of $1,800; that said judgment was affirmed by a Court of Civil Appeals December 12, 1923; that the judgment has not been paid; that he had been notified that other parties than said Henry Teague claimed to own the same by transfer from him; and that he (Davis) was ready and willing to pay the amount of the judgment into court, to be turned over by it to the legal owners thereof. Before said answer was filed, to wit, on April 10, 1924, Elsie M. Teague and the members of the firm of Woods, King & John, lawyers, had intervened in the garnishment suit, alleging that on May 4, 1922, Henry Teague conveyed one-half of the cause of action on which the judgment was based to said Woods, King & John, and on January 26, 1923, conveyed the other one-half thereof to said Elsie M. Teague. In the trial court appellant conceded that Woods, King & John owned one-half of the judgment in Teague's favor, but in an answer filed February 21, 1925, to the claim of Elsie M. Teague that she owned one-half the judgment, alleged that the transfer from

⬥═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Henry Teague to her was without consideration and was made by him with intent to hinder, delay, and defraud his creditors and in pursuance of a conspiracy between him and her to place his property beyond the reach of his creditors. It appeared from evidence heard at the trial that the judgment recovered by Henry Teague January 21, 1922, referred to in the answer of appellee Davis to the writ of garnishment served on him, originally was for $9,875, but that same was made final for only $1,800. The transfer from Henry Teague to his wife, Elsie M. Teague, was evidenced by a written instrument as follows:

"The State of Texas, County of Harris:
"Know all men by these presents that I, Henry Teague of said county and state, and being the plaintiff in judgment in cause No. 91534, Henry Teague v. James G. Davis, Agent, pending in the district court of Harris county, Tex., Fifty-Fifth judicial district, and in which said case on the 20th day of January A. D. 1922, I recovered a judgment in said cause in the sum of $9,875.00, one-half (½) of which said judgment had heretofore been assigned by me to my attorneys of record, Woods, King & John, for and in consideration of the sum of $1,000.00 in cash to me in hand paid by Elsie M. Teague, and the assignment, transfer and delivery to me of that certain vendor's lien note in the sum of $2,800.00 on Mrs. L. M. Lewis, given in part payment for that certain cottage and lot situated on Waverly street at No. 1205 in said city of Houston, or her agreement to assign and transfer said note to such other person as I may order and direct, do bargain, sell, transfer and assign unto the said Elsie M. Teague for her own separate use and benefit and in her own separate right the undivided one-half (½) interest on said judgment, and the cause of action upon which same is based, hereinabove mentioned and described, belonging to me, it being understood and agreed that as a part of the consideration of said transfer and assignment that the $1,000.00 in cash shall be used by me as a partial payment upon an outstanding vendor's lien note upon my present homestead at 2218 Beauchamp street in said city, and that the balance due upon the vendor's lien note of Mrs. L. M. Lewis above mentioned, or $2,000.00 thereof, shall be applied to the payment of the purchase price of that certain lot adjacent to my present homestead at 2218 Beauchamp street, and lying between said homestead and the bridge of Houston avenue.

"To have and to hold said one-half (½) of said judgment, and the cause of action upon which same was rendered,' unto the said Elsie M. Teague in her own separate and individual right forever.

"Witness my hand this the 26th day of January, A. D. 1923.    Henry Teague."

The trial was to the court without a jury, and he found that the $1,000 mentioned in the foregoing instrument as having been paid by Elsie M. Teague in cash was money paid to her on a judgment in her favor against a railroad company for damages for injury to her person suffered by her as a result of acts for which it was responsible. The court found, further, that Henry Teague used said $1,000 paid to him by his wife, Elsie, in making a payment on a promissory note made by him and his wife secured by a vendor's lien on their homestead; and that the $2,800 note mentioned in said instrument was used by Henry Teague in purchasing land adjoining said homestead, which land when so purchased was conveyed to his wife, Elsie, in her own separate right. The court found, further, that while there was no express agreement between Henry Teague and his wife that the money paid to her on the judgment in her favor for personal injury she suffered should be her separate property, both of them so regarded and treated it, and that the money was deposited to the wife's credit in a bank which issued its "interest-bearing certificate of deposit" to her; and, further, that the wife would not have paid over the $1,000 to Henry Teague or transferred said $2,800 note to him "except for her belief that she was, for the consideration in said assignment described, buying from her said husband an undivided one-half interest in the judgment of the said husband against the federal agent." The court found, further, that during the latter part of 1922, and shortly prior to the date of the assignment from said Henry Teague to Elsie M. Teague, plaintiff (Fairchild) was negotiating with Henry Teague and with George S. King, who was the attorney for both the said Henry Teague and the said Elsie M. Teague, in an endeavor to collect the debt from said Henry Teague to plaintiff, which was then totally in default; and the said Henry Teague at that time had no assets subject to judgment and process thereon unless the judgment in his favor against the federal agent was then subject to such process, but, further, that appellant "failed to prove as a fact, by a preponderance of the evidence, that Henry Teague and Elsie M. Teague conspired to transfer the property of Henry Teague in order to defraud the creditors of Henry Teague or C. M. Fairchild as such creditor, or to place the property, funds or assets of the said Henry Teague beyond the reach of such creditors or beyond the reach of C. M. Fairchild, or that the assignment of the one-half of the said judgment from Henry Teague to Elsie M. Teague was given with intention to delay, hinder or defraud any creditor of the said Henry Teague, the court being of the opinion from the facts that the said Elsie M. Teague, for a valuable and sufficient consideration paid at the time, was buying from her said husband his one-half interest in the judgment in favor of her husband, above specified."

The court found, further, that "neither of garnishees owed Henry Teague any sum of money, and neither of them had any effects of said Henry Teague in their possession at

the time the writ of garnishment herein was served, or at any time after the service of the writ, unless the judgment above described of Henry Teague against the federal agent was subject to such writ under the facts hereinabove found, and concluded from the facts he found "and from the insufficiency of plaintiff's evidence on issues as to which plaintiff had the burden of proof, that plaintiff was not entitled to recover as against garnishee or any of the interveners herein."

The appeal by Fairchild is from a judgment denying him a recovery of anything and releasing the fund he sought to impound in the hands of appellee Davis against Fairchild in favor of attorneys for said appellee Davis for $25 for filing his answer to the writ of garnishment, and also against him in favor of the other parties for costs.

Boyles, Brown & Scott, E. F. Gibbons, and Pat N. Fahey, all of Houston, for appellant.

Woods, John & Cox, King & Wood, and Geo. S. King, all of Houston, for appellees.

WILLSON, C. J. (after stating the facts as above). [1] The trial court found (in effect) that Henry Teague was insolvent at the time he executed the instrument (set out above) purporting to be a transfer to his wife of an interest in the judgment he obtained against appellee Davis. That being true, by force of article 3967, Vernon's Sayles' Ann. Civ. St. 1914, the transfer was void as' to appellant if it was not upon consideration deemed valuable in law; and by force of article 3966 of said statutes it was void if it was upon such a consideration, if made by Teague with intent to delay, hinder, or defraud his creditors and his wife had or was chargeable with notice of such intent on his part.

Appellant insists it conclusively appeared from the evidence that the transfer was without a consideration, or, if it was not, that it conclusively appeared that it was made by Teague with a fraudulent intent of which his wife had notice. Hence, appellant says, the findings of the trial court to the contrary were not warranted.

[2] The consideration recited in the instrument was $1,000 paid by Teague's wife, and a vendor's lien note for $2,800 belonging to her. It is plain enough, we think, the note cannot be treated as a consideration for the transfer, for it was passed to Teague for use in buying a lot adjoining the homestead, was so used, and the title to the lot bought was conveyed to the wife in her own separate right and became a part of her separate estate. So far as the note was concerned Teague never became the owner of it, but merely held it, and used it for his wife in accordance with her instructions.

[3-5] It is also plain, we think, that the $1,000 was not a sufficient consideration for the transfer. The sum was part of the proceeds of a judgment in the wife's favor against a railroad company for damages for injury to her person. By the terms of article 4621a, Vernon's Ann. Civ. St. Supp. 1918, "property or moneys received as compensation for personal injuries sustained by the wife," except the part thereof necessary to pay expenses incurred because of such injuries, was declared to be her separate property. While the statute was treated as valid in Railway Co. v. Ulmer (Tex. Com. App.) 286 S. W. 193, we feel bound by the ruling of the Supreme Court in Arnold v. Leonard, 114 Tex. 535, 273 S. W. 799, and cases following it (Gohlman v. Whittle, 114 Tex. 548, 273 S. W. 808; Kerr v. Bank [Tex. Civ. App.] 283 S. W. 601), to hold it was invalid because in violation of section 15 of article 16 of the Constitution specifying what constitutes the separate property of a wife.

It follows we are of opinion it appeared the proceeds of the judgment in favor of the wife belonged to the community estate between her and her husband at the time of the transfer in question, unless it can be said there was evidence warranting a finding that at a time when he was solvent and could do so Teague had given same to his wife. Appellant insists there was no such evidence, and we agree there was not, and that if the finding of the court that Teague and his wife regarded and treated such proceeds as the wife's separate property and that same were deposited in a bank in her name should be construed as a finding that Teague gave such proceeds to his wife at a time when he was solvent, it was not warranted by evidence. Appellees insist that the evidence showing the suit for damages for the injury the wife suffered was, with the consent of her husband, brought in her name, and that the judgment rendered was in her favor alone, warranted the finding that the husband then gave the wife such proceeds or the claim therefor. We do not think so. The wife did not testify, but Teague, referring to the $1,000, testified:

"I did not give her (his wife) that money, but it was a part of the judgment. I didn't have any money to give anybody."

We think it is clear from all the evidence pertinent to the question in the statement of facts that Teague and his wife "regarded and treated" the proceeds of the judgment in her favor as her separate property, as found by the court, because they erroneously supposed the effect of article 4621a of the statutes referred to above was to make same her separate property.

[6] Appellees insist that if the interest in the judgment in Teague's favor against appellee Davis remained the property of the community estate between Teague and his wife after as it was before the former undertook to transfer it to the latter, the action of the trial court in denying appellant a

recovery of anything against appellee Davis was nevertheless warranted because of the failure of appellant to prove that the judgment in the wife's favor was not to compensate her for loss (as a result of the injury to her person) of capacity she possessed to earn money. In support of this contention appellees refer to article 4622, Vernon's Sayles' Ann. Civ. St. 1914, which provides that the personal earnings of a wife, though community property, should be under her "control, management and disposition," and to the provision in article 4621, Vernon's Ann. Civ. St. Supp. 1918, that such earnings should not "be subject to the payment of debts contracted by the husband." The argument is that in the absence of evidence showing to the contrary it should be assumed that the judgment in the wife's favor was to compensate her for lost earning capacity; that therefore it should have been assumed the proceeds of that judgment were not subject to Teague's indebtedness to appellant; and that, because same were not, the interest in the judgment in his favor which Teague transferred to his wife in consideration of the $1,000 was not subject to said indebtedness to appellant.

We think the contention is without merit. If it should be conceded, and it is not, that the burden was on appellant to show that the amount awarded the wife by the judgment in her favor was not compensation for lost capacity on her part to earn money, and that, appellant having failed to discharge the burden, the trial court had a right to assume that the recovery by the wife was for such lost capacity and to say the proceeds of the judgment therefore were not subject to the indebtedness of Teague to appellant, it would not follow that the judgment in Teague's favor against appellee Davis was not subject to the writ of garnishment. Appellant and other creditors of Teague may not have been entitled to subject the proceeds of the judgment in the wife's favor to claims they held against Teague, because such proceeds represented compensation to her for lost capacity to earn money, but the fact that they were not would not be a reason why such creditors should not have been allowed to subject the judgment in Teague's favor to their claims. The exemption provided for by the statute was of the earnings of the wife, not of property she might acquire by purchase with or in exchange for such earnings.

[7] If, however, we did not think it conclusively appeared that the transfer in question was void as to appellant because without a consideration and made at a time when Teague was insolvent, we would feel bound to hold it void as to appellant on the other ground urged by him, to wit, that it appeared from the testimony as a matter of law that the transfer was made with the intent on the part of Teague to delay, hinder, or defraud his creditors, including appellant,

and further so appeared that the wife was chargeable with notice of such intent on Teague's part, and to hold, further, that the finding of the trial court to the contrary was unwarranted. We cannot better state the record and the reason for the conclusion reached by us with reference to this phase of the case than by quoting from appellant's brief as follows:

"In viewing the circumstances surrounding the making of the assignment of his judgment by Henry Teague to Elsie M. Teague the first striking fact is that that assignment was made by an insolvent husband to his wife. The next striking fact is that it was made while the husband was being pressed to pay an indebtedness to appellant, and only a few days after the attorneys for appellant and said Henry Teague had reached a point where further negotiations for the settlement of his indebtedness to appellant were considered useless, and it had been decided to resort to court action. The next striking fact is that there was no necessity for the assignment at the time it was made. The debt which was to be paid with a part of the proceeds of the assignment was not due on January 26, 1923, the date of the assignment, and would not become due until the 10th day of March, 1923, and the $1,000 mentioned in the assignment was not paid until March 5th of that year. The next striking fact is that there never was a necessity to put in Henry Teague the title to the $2,800 note mentioned by the assignment. That note was used to purchase separate property of Elsie M. Teague. These facts clearly evidence a fraudulent intent on the part of Henry Teague, and if his wife had notice of his intent she acquired no title by the assignment.

"Now, notice of fraud is often as difficult of proof as fraud itself. But the circumstances surrounding the transaction of which notice is sought to be proved may be looked to for the purpose of establishing notice. And what do we find? We find an insolvent husband making an assignment to his wife. That she knew of his insolvency is evident from the following facts: That he had been out of work for several months. That he had no property from which to derive an income. That she knew of the debt to appellant is evident from the fact that she had executed a deed of trust to secure it. She knew that debt was past due. She must have known he was being pressed for the payment of appellant's debt because that debt was the one secured by her deed of trust which had not been released. She could hardly be supposed to be ignorant of such facts. Moreover, she did not relinquish her control of the alleged consideration for the assignment, but made her husband agree in writing to pay the $1,000 on their joint note against their community homestead and to use her $2,800 note in the purchase of a lot adjoining their home. And when this lot was purchased, less than 30 days after the assignment, she took title thereto as her separate property. Besides all this, there was no more necessity for her to transfer the $1,000 and her $2,800 note to her husband for the purpose of having them applied in accordance with the terms of the assignment than there was for the husband to

make the assignment. She could have paid the $1,000 to the Houston Land & Trust Company (holder of the note against the homestead) herself without the assignment. If her husband did not have the means to pay their joint note against their homestead, it was certainly to her interest, perhaps her duty, to pay it. She may not have been personally liable on such a note, but her community homestead was liable. She could, with the joint signature of her husband, have traded her $2,800 note for the adjoining lot and acquired the title thereto without any necessity to transfer such note to her husband.

"Viewing these facts in the aggregate, considering the insolvency of the husband, her knowledge of his indebtedness to appellant, his evident fraudulent intent, the lack of necessity for the assignment, the provisions of the contract respecting the disposition of the stated consideration, the payment of the $1,000 on the joint note of herself and husband secured by a lien on their community homestead, the taking of the adjoining lot as her separate property, it is hard to see how she could be held to have acted in good faith in the transaction. An inference of notice must necessarily be drawn from such a state of facts. This being true it devolved on Elsie M. Teague to rebut this inference. What evidence was offered in rebuttal? Absolutely none. She did not even take the stand. No attempt was made by either Henry Teague or Elsie M. Teague to explain away the inference of fraudulent intent on the part of the assignor or to dissipate the imputation of notice to the assignee."

[8] It appeared that the writ of garnishment served on appellee Davis February 9, 1923, required him to answer at a term of a Harris county district court which began March 5, 1923, and that he did not answer the writ until April 17, 1924. It further appeared that the cause of action on which the judgment was based was for unliquidated and uncertain damages claimed by Teague, and that the judgment did not become final until December 2, 1923. In support of the judgment in the instant case appellees insist it appeared that appellee Davis was not indebted to Teague until said December 12, 1923, when the judgment against him became final, and that said appellee Davis could not, "by delaying his answer until after the appeal is disposed of, subject the judgment to the lien of the garnishment the return day of which had expired long before the appeal is disposed of."

The contention is not tenable. It is based on the holding in Medley v. American Radiator Co., 27 Tex. Civ. App. 384, 66 S. W. 86, that a writ of garnishment "attaches to only such liability as had accrued at the date of service or accrues between the service of the writ and the date named for the answer." At the time the Medley Case was decided (in 1901) there was no provision in the statute as there was when the judgment in the instant case was rendered (article 282, Vernon's Ann. Civ. St. Supp. 1922), that the answer of a garnishee "may be filed as in any other civil case at any time before such default judgment is rendered." The statute in force at the time appellee Davis answered the writ served on him required him to state what, if anything, he was indebted to Teague at the time he answered the writ, as well as at the time the writ was served on him (article 276, Vernon's Sayles' Ann. Civ. St. 1914), and required the court to render judgment for the plaintiff in the writ if it appeared from the answer of the garnishee that at the time he made the answer or at the time the writ was served on him he was indebted to the defendant.

[9] We think the judgment should have been in appellant's favor. It will be reversed so far as it was against him and in favor of appellee Elsie M. Teague; and it appearing in the record that at the date of the judgment, to wit, December 18, 1925, the indebtedness of Henry Teague to appellant amounted to the sum of $1,668.74, and that at that date one-half of the amount of said indebtedness of said Davis to said Teague was $1,111.10, and it further appearing that said Elsie M. Teague, claiming to own one-half of said indebtedness of said Davis to Henry Teague, together with Woods, King & John, who owned the other one-half thereof, on June 18, 1924, with the American Indemnity Company as their surety, executed a replevy bond in the sum of $3,000 in appellant's favor, said judgment will be so reformed as to adjudge a recovery in favor of appellant against said Elsie M. Teague and said American Indemnity Company, surety on said bond (Mercantile Co. v. Nabors [Tex. Civ. App.] 221 S. W. 991, 994; Seinsheimer v. Flanagan, 17 Tex. Civ. App. 427, 44 S. W. 30; Tinsley v. Ardrey, 26 Tex. Civ. App. 561, 64 S. W. 803; Creamery Co. v. Supply Co. [Tex. Civ. App.] 116 S W. 154), in said sum of $1,111.10 and interest thereon from said December 18, 1925. The cost of the intervention of Elsie M. Teague in the court below and the sum of $25 in favor of the attorneys of appellee Davis for preparing his answer to the writ of garnishment, together with the costs of the appeal, will be adjudged against said Elsie M. Teague and said American Indemnity Company, surety as aforesaid. The judgment will not be disturbed in other respects than those specified.